# United States District Court
# District of Connecticut

James McKinnon Civil no. 3:03CV944 (RNC)(DFM)

vs.

Yvonne Colette; ETAL
Pamela Shea
Ceryl Schwink
Pauline Husband
Nita Donavan
Jim Taylor
    Hannah

August 26, 2004

Defendants          Individual Capacitites

## Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment

1. Plaintiff understand that the court will never weigh the evidence, weigh the evidence or find the facts, however the courts role under Rule 56, is narrowly limited to assessing, the threshold issue of whether a genuine issue exists as to material facts requiring a Trial. See Anderson v. Libeerty, Lobly: Inc. 477 U.S. 242, 249, 106.CT 2505, 2510, 91 L. ED 202 (1986).

2. In this case the plaintiff have presented absolute concerete proof of constitutional as well as state violations.

3. On June 4, 2003, The fact that the defendant Pamela Shea amitted she is unaware of when the mail was opened she sent May 6, 2003, show a unauthorized release of medical information Doe v. Meachum.

By: *James Lee McKinnon*
James McKinnon

# Memorandum of Law

Prisoners have a constitutional right to privacy in their medical diagnoses and other medical information. See A.L.A. v. West Valley City 26 F. 3d 989, 990 (10th Cir. 1994); Nolley v. County of Erie 776 F. Supp. 715, 729 (W.D.N.Y 1991); Doe v. Meachum, 126 F.R.D. 437, 439 (D. Conn. 1988;

For all the reason set forth herewith and the attached document the plaintiff respectfully request that this motion to be granted and that summary judgment be granted in favor of the plaintiff.

Plaintiff:

By: James Lee McKinnon
James Lee McKinnon pro se
Corrigan Rodgowski
Correctional Institution
986, Norwich New London
Uncasville Connecticut
06382

## Certification

I hereby certify that the foregoing was mailed to the defendants attorney of record this 26th Day of August 2004,

Kathleen A. Keating
Assistant Attorney General
Federal Bar no. CT25247
110, Sherman Street
Hartford Connecticut 06105

Defendants
Yvonne Colette; ETAL
Pamela Shea
Ceryl Schwink
Pauline Husband
Nita Donavan
Jim Taylor
Hannah H

By: James McKinnon
James McKinnon

# Exhibit

# 1

| State of Connecticut<br>Department of Correction | DIRECTIVE NUMBER<br>8.7 | EFFECTIVE DATE<br>August 16, 1999 | PAGE 1 OF<br>6 |
|---|---|---|---|
| ADMINISTRATIVE DIRECTIVE | SUPERSEDES: | | |
| APPROVED BY [signature] 7/23/99 | TITLE: Health Records Management | | |

1. **Policy.** The Department of Correction shall accurately document the health services provided to inmates and ensure that confidentiality of the health record is maintained.

2. **Authority and Reference.**

    A. Connecticut General Statutes, Sections 1-1d, 1-15, 4-190(3), 4-193b, 4-193d, 4-194, 18-81, 18-94, 19a-581 through 19a-583, 19a-585, 20-7(b) through 20-7(d), 52-146d through 52-146j, 52-146i, 52-146o, and Chapter 899.
    B. Regulations of Connecticut State Agencies, 19a-14-40 and 19a-14-43.
    C. Doe vs Meachum, Civil Action No. H-88-562 (PCD), November 2, 1990.
    D. West vs Manson, Civil Action No. H-83-366 (ANH), April 23, 1987.
    E. Smith vs Meachum, Civil Action No. H-87-221 (JAC) August 8, 1989.
    F. American Correctional Association, Standards for Adult Correctional Institutions, Third Edition, January 1990, Standards 3-4376 through 3-4379.
    G. American Correctional Association, Standards for Adult Local Detention Facilities, 1991, Third Edition, Standards 3-ALDF-4E-16, 3-ALDF-4E-22, 3-ALDF-4E-31 and 3-ALDF-4E-46 through 3-ALDF-4E-48.
    H. National Commission on Correctional Health Care, Standards for Health Services in Prisons, January 1987, Standards P-05, P-07, P-28, P-30, P-42, P-64, P-65, P-67.
    I. Administrative Directives 3.10, Fees and Reimbursements and 8.11, Human Immunodeficiency Virus Infection.

3. **Definitions.** For the purposes stated herein, the following definitions apply:

    A. **Authorized Representative.** A parent, guardian, or conservator appointed to act on behalf of a person regarding access to health information.
    B. **Health Authority.** The Director of Health Services.
    C. **Health Services Staff.** Any staff person employed by the Department of Correction, or the Department of Correction's provider for health services, on a part time, contractual, or full time basis whose primary responsibility is to provide health services to inmates remanded to the care and custody of the Commissioner of Correction. Any student intern or volunteer under the supervision and direction of health services shall be considered health services staff.

4. **Confidentiality.** Information regarding an inmate's healthcare shall be protected as required by C.G.S 899. Such information is governed by the provision of C.G.S 52-146d through 52-146j, inclusive.

Exhibit I [handwritten] Jane McK

5. <u>File Storage, Maintenance and Retention</u>. Health Service staff at each facility shall ensure that a complete and properly organized health record is on file for each inmate in the facility.

   A. <u>Storage</u>. All health records shall be filed numerically. Active health records shall be maintained in the facility's Health Services Unit. Inactive health records shall be stored in a designated secured repository.
   B. <u>Maintenance</u>. Health Service staff shall ensure that each inmate's health file is updated as necessary and maintained in a secure and confidential manner.
   C. <u>Retention</u>. Each health record shall be retained for 25 years after release from Department of Correction custody.

6. <u>Health Services Log</u>. Each facility's Health Services Unit shall maintain a logbook used to maintain accountability and locate any health record removed from the file by an authorized staff member. The appropriate Health Services staff member shall sign the designated log within the unit each time the staff member removes or replaces a file.

7. <u>Format</u>. Each health record shall be labeled with the inmate's identification number. The inmate's name shall be clearly and neatly written or typed on a white adhesive label affixed to the record jacket. Health record forms shall be filed in reverse chronological order, with the most recent information on the top. The Director of Health Services or designee shall approve, and annually review the contract provider's revisions, a list of forms and information to be included in each section of the health record which shall be organized into a left side and right side containing sections as follows:

   A. Left side of health record shall contain the current section, clinic section, initial assessment section, laboratory section, radiology section, consultation section, and correspondence section.
   B. Right side of health record shall contain the current section, mental health section, dental section, in-patient section, and medication section.

8. <u>Documentation</u>. The health record shall be a repository of historic and current health data gathered on an inmate and shall reflect the medical, dental, and mental health status of the inmate. All documentation shall be in black ink with the exception of the identification of allergies. All entries shall be documented in chronological order and shall include the month, day, year, and time specified in a.m. or p.m., or in 24 hour notations. Each entry shall be signed with the full name and title of the health care provider making the entry. Initials shall not be accepted as legal identification of person. No health care provider shall sign the entry of another health care provider unless a countersignature or witness is required. No blank spaces shall be left between entries. Only approved abbreviations shall be used in documenting.

9. <u>Access and Disclosure</u>. Information in the health record shall be maintained in a confidential manner. Access to the health record shall be restricted to authorized persons and shall be controlled by the responsible physician and the Director of Health Services. Written authorization shall be required for disclosure of all or any part of the health record to any individual not authorized by this Directive.

   A. <u>Disclosure to an Inmate/Authorized Representative</u>. If a health record is to be released to an inmate or to an inmate's authorized representative, the responsible physician or designee shall review the record prior to release. If the physician or designee believes that disclosure to an inmate of the inmate's medical, psychiatric or psychological data would be detrimental to the inmate, the physician shall relate such concern, through the chain of command, to the Director of Health Services or designee for appropriate consultation with Attorney General's Office.

      1. <u>Inmates Under 18 Years of Age</u>. Written authorization, signed by an authorized representative, shall be required for the release of the health record of an inmate under 18 years of age with the exception of Section 9(A)(2) below.
      2. <u>HIV Testing Information Regarding Inmates Under 18 Years of Age</u>. When an inmate under the age of 18 years old has requested testing, examination, or treatment for HIV and has requested that the inmate's parent or guardian not be informed, and the physician believes that the inmate would not submit to testing, examination, or treatment if the parent or guardian were informed, and the physician has documented such in the health record, the test may be done. This provision shall be granted if the attending physician believes a minor shall have the right to authorize the release of only personal health information which is not related to testing for HIV infection or to the examination and/or treatment for HIV infection.

   B. <u>Disclosure to Warden/Complex Warden</u>. The responsible contract provider's Health Services Administrator or designee shall provide the Warden with relevant information concerning an inmate's medical and mental health management, security and ability to participate in programs. When an inmate suffers from a health condition that may result in a medical or mental health crisis or risk of disease transmission to another, the responsible contract provider's Health Services Administrator or designee shall inform the Warden.

   C. <u>Disclosure to Classification Personnel</u>. Inmate health information provided by health care staff to classification personnel or classification systems shall be limited to the identification of restrictions required by the inmate's health condition and shall not include disclosure of health information specific to the inmate.

   D. <u>Disclosure to the Commissioner or Designee</u>. The Commissioner or designee and the Commissioner's legal representatives, including the Attorney General's Office, shall have access to all available records as necessary for the performance of the Commissioner's

duties, including the defense of the agency. Health Services staff shall verify the identification of any authorized representative of the Commissioner who requests a copy of an inmate health record.

E.  **Additional Disclosure.** Disclosure of HIV related information shall only be made as outlined in Administrative Directive 8.11, Human Immunodeficiency Virus Infection.

The Authorization for Release of Information form, CN 4401, containing the signature of the inmate or the inmate's authorized representative, shall be required prior to disclosure of an inmate's specifically designated health information to a named person or institution by a health care provider.

10. **Requests for Information.**

   A.  **Facility Requests.**

   1.  **Prior Records.** Upon readmission of an inmate, the facility's Health Services Unit shall request the inmate's prior health record. The prior health record shall be transferred to the requesting facility within three (3) days. The prior record shall be combined with the existing record within 24 hours of the arrival of the prior record.
   2.  **Prior Drug Treatment Records.** When an inmate admitted to York CI is involved in a community methadone maintenance program, the facility shall initiate telephone contact with the inmate's methadone program within 24 hours to confirm participation and dosage level.
   3.  **Community Records.** When a contract provider's practitioner requests a prior community health record, Health Services staff shall obtain written authorization from the inmate or authorized representative and send such authorization to the provider. When an inmate is referred to a community health care provider, health care staff shall send a sealed, written authorization for release to the Department's Health Services Unit with the escorting officer, requesting all health data developed during the consultation, treatment or hospitalization that has been provided in the community. Upon receipt of the community information, it shall be reviewed by contract provider's Health Services staff and filed in the inmate's health record.

   B.  **Fees.** When an inmate or authorized representative requests a copy of a health record, the inmate's account shall be charged a fee in accordance with Administrative Directive 3.10, Fees and Reimbursements. The Director of Health Services or designee shall approve procedures for copying and reviewing the health record.

11. **Transfer and Movement.**

   A.  **Removal from the Health Services Unit.** The health record shall be retained in the Health Services Unit unless it is necessary for the record to accompany the inmate to a medical, dental, or mental

health appointment, facility transfer or as otherwise specified in this Directive.

B. **Facsimile and Automated Transmission.** Contents of the health record shall not be sent by facsimile and/or other automated transmission to any location other than a Department Health Services Unit or to a community health provider unless authorized by the Director of Health Services or designee.

C. **Pre-Transfer Review.** Prior to transfer of an inmate to another Department facility, an appropriate Health Services staff member shall review the health record and assess the inmate's suitability for transfer and travel. The staff member shall provide documentation necessary to ensure that the inmate receives care during travel and upon the inmate's arrival at the receiving facility.

D. **Health Record Transfer.** Upon transfer of an inmate to another facility, Health Services staff shall coordinate with the transporting staff member(s) to ensure that the health record is transported simultaneously with the inmate. When the health record leaves the Health Services Unit for transfer or any other authorized purpose, the health record shall be packaged in an envelope large enough to accommodate the volume. The inmate's name and number shall be written on the outside along with the name of the receiving Health Services Unit or designated person authorized to receive the health record. The envelope shall be sealed with a confidential sticker.

In the absence of Health Services staff, operational staff designated by the Warden shall package the health record for transport.

E. **Discharge or Transfer to Community Release.** When the inmate is discharged from Department custody, the health record shall be transferred to the Health Services records repository.
If transferred to community supervision the health record shall be transferred to the facility nearest the community release program.

12. **Records of Inmates with HIV Infection.** Prior to the release of an inmate with HIV infection from a facility to the community, health care staff shall prepare a discharge packet. The information which is provided in the discharge packet shall include all current diagnoses, current problems, treatments which have been provided, the inmate's response to treatment, complications noted, allergies description of condition on discharge, and any follow-up instructions. A copy of the discharge packet shall be placed in the inmate's health record as well as being forwarded to the community health care provider. The inmate shall be offered a copy of the discharge packet.

When an inmate with HIV infection is transferred to community release or discharged from the Department, HIV health information shall be forwarded to the contract provider's Risk Management Unit.

13. **Review.** The Director of Health Services or designee shall ensure that the health record is subject to regular, periodic quality assurance review by contract provider's Health Services staff.

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE | OF |
|---|---|---|---|
| 8.7 | August 16, 1999 | 6 | 6 |

| TITLE |
|---|
| Health Records Management |

14. **Training.** The Director of Health Services or designee shall ensure that the contract provider's Health Services staff is properly trained in the use and implementation of the health record.

15. **Exceptions.** Any exception to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.

# Exhibit 2



# Inmate Request Form
### Connecticut Department of Correction

CN 9602
Rev. 9/3/02

| Inmate Name | | Inmate no. |
|---|---|---|
| Facility | Housing unit | Date |

**Submitted to**

**Request**

(continue on back if necessary)

**Previous Action Taken**

(continue on back if necessary)

**Acted on by (print name)**     **Title**

**Action Taken and/or Response**

(continue on back if necessary)

**Staff Member Signature**     **Date**

4 of 4

CN 1305
Rev. 9-25-91

# Administrative Directives Revision Form
## Connecticut Department of Correction

| Number | 4.4 | Title | Access to Inmate Information |

**Revisions appear on:**

| Page | Section | Page | Section |
|------|---------|------|---------|
| ___  | ___     | ___  | ___     |
| ___  | ___     | ___  | ___     |
| ___  | ___     | ___  | ___     |
| ___  | ___     | ___  | ___     |

**Summary of revisions:**

Section 5 was modified to direct all questions regarding disclosure to the Unit Administrator, not Central Records.

Section 5(D) was added regarding third party health records, inmates under age 18 and HIV testing information regarding inmates under age 18.

Section 5 E, F and G explain disclosure to the Warden, Classification personnel and the Commissioner.

Section 5(H) was added to refer to additional disclosure and the CN 4401, Authorization for Release.

Section 5(I) was added with regard to inmate workers in proximity to health records.

**Revisions are:** [ ] New directive   [✓] Modification   [ ] Recision

**Approved** /s/    2/20/01

Exhibit "29" James McK

| State of Connecticut Department of Correction | DIRECTIVE NUMBER | EFFECTIVE DATE | PAGE 1 OF |
|---|---|---|---|
| | 4.4 | March 9, 2001 | 6 |
| ADMINISTRATIVE DIRECTIVE | SUPERSEDES: Access to Inmate Information - 9/3/96 | | |
| APPROVED BY [signature] 2/20/01 | TITLE: Access to Inmate Information | | |

1. **Policy.** Access to inmate information produced, gathered, and stored by the Department of Correction may be granted in accordance with policies, laws and regulations regarding the confidentiality of such information.

2. **Authority and Reference.**

    A. Connecticut General Statutes, Sections 1-19, 1-20b, 18-81, 19a-565, 53a-70, 53a-70a, 53a-71, 53a-72a, 53a-72b, 53a-73a and Record of Arrest as Public Record 54-142a through 54-142p.
    B. Connecticut General Statutes, Chapter 899.
    C. CFR, Title 42.
    D. "Communications Terminal User's Agreement," between the Connecticut Department of Public Safety and the Department of Correction, 1989.
    E. American Correctional Association, Standards for Adult Correctional Institutions, Third Edition, January 1990, Standards 3-4020, 3-4068, 3-4092, 3-4095, 3-4096, 3-4098 and 3-4099.
    F. American Correctional Association, Standards for Adult Local Detention Facilities, Third Edition, March 1991, Standards 3-ALDF-1C-24, 3-ALDF-1E-01, 3-ALDF-1E-05, 3-ALDF-1E-06, 3-ALDF-1F-02 and 3-ALDF-1F-03.
    G. American Correctional Association, Standards for the Administration of Correctional Agencies, Second Edition, April 1993, Standards 2-CO-1E-06 through 2-CO-1E 08, 2-CO-1F-01, 2-CO-1F-06 and 2-CO-1F-07.
    H. Administrative Directives 1.4, Cooperation with Community and Governmental Organizations; 1.7, Research; 3.10, Fees, Reimbursements and Donations; 4.3, Court Processes; and 8.11, Human Immunodeficiency Virus Infection.

3. **Definitions.** For the purposes stated therein, the following definitions apply:

    A. **Conviction Information.** Criminal history record information which has not been erased, as provided in Connecticut General Statutes, Section 54-142g, and which discloses that a person has pleaded guilty or nolo contendere to, or was convicted of, any criminal offense, and the terms of the sentence.
    B. **Criminal History Record Information.** Court records and information compiled by criminal justice agencies for purposes of identifying an inmate and of maintaining notations of arrests, releases, detentions, including pleas, trials, sentences, appeals, incarcerations, correctional supervision (classification, disciplinary history, etc.), paroles and releases; but not including intelligence, presentence investigation, investigative information.
    C. **Criminal Justice Agency.** Any court with criminal jurisdiction, the Department of Correction, Department of Public Safety, the Department of Motor Vehicles, or any other governmental agency

Case 3:03-cv-00944-RNC   Document 34-2   Filed 09/08/2004   Page 14 of 18

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE | OF |
|---|---|---|---|
| 4.4 | March 9, 2001 | 2 | 6 |
| TITLE | Access to Inmate Information | | |

created by statute which is authorized by law and engages, in fact, as its principal function in activities constituting the administration of criminal justice; including, but not limited to organized municipal police departments, the Office of Adult Probation, Office of Policy and Management, State's Attorneys, Deputy Assistant State's Attorneys, Parole Board, Pardon Board, Bail Commissioners and Chief Medical Examiner.

 D. <u>Current Offender Information</u>. Information on the current status and location of any person who: (1) is arrested or summoned to appear in court; (2) is being prosecuted for any criminal offense in superior court; (3) has an appeal pending for any criminal conviction; and (4) is detained or incarcerated in any correctional facility in this state, including any person transferred to other states for incarceration or supervision and including location, jurisdiction, location, entry type, and date of entry to current location.

 E. <u>Direct Access</u>. The obtaining of information without any other individual participating in the retrieval of the information.

 F. <u>Disclosure</u>. The communication of information to any person by any means.

 G. <u>Inmate Personal Data</u>. Information which pertains to the inmate, which is not included in the above types of inmate information including previous employment, veteran status, emergency contact, education, finances, medical or psychiatric history, family and personal relationships.

 H. <u>Non-Conviction Information</u>. Criminal history record information that has been deleted as provided by law; information relating to any person granted youthful offender status; and continuances which are more than 13 months old.

4. <u>Direct Access</u>. Direct access shall be available only for criminal justice purposes and only to the extent necessary for the performance of duty. The Unit Administrator of each Department site shall insure that any person having direct access to information is trained in the responsibilities of gathering, viewing or updating information; requires such access for the proper performance of the person's duties; and has agreed not to disclose the information to recipients who are ineligible to receive it. No inmate shall have direct access to any equipment providing automated offender information of any type.

5. <u>Disclosure to an Inmate</u>. The following guidelines shall be observed regarding the disclosure of information to an inmate. Any questions regarding the authorization to disclose particular information shall be forwarded to the Unit Administrator.

 A. <u>File Access</u>. An inmate may view their own master file by submitting a request to their counselor. An inmate's attorney/attorney representative, upon providing satisfactory verification of identity to the appropriate staff member(s), may view the inmate's master file upon the inmate's submission of a signed Release of Information form, CN 4401, to the Unit Administrator. The inmate's master file shall be reviewed by a staff member for unavailable material, in accordance with Section 5(B) below, prior to granting any request for access. Such

material shall be temporarily removed from the file until the requested access is completed. Each Unit Administrator will determine a time and place during normal business hours where this review may take place and designate staff who will remain in the area during the review and ensure that no material is removed from the inmate master file. The inmate or the inmate's attorney may view Criminal History Information, Current Offender Information, Inmate Personal Data, or Non-Conviction Information contained in the master file. This information may include, mittimuses, classification actions, program reports and evaluations, time sheets, disciplinary reports and work reports.

B. <u>Unavailable Material</u>. The inmate shall not have access to any documents or reports which would breach a legally confidential relationship or jeopardizes the safety of the public, staff or any inmate, or jeopardizes the security or orderly operation of the facility, or for which non-disclosure is otherwise authorized or required.

C. <u>Copies</u>. An inmate may receive copies of any available information. Inmates receiving copies of available information shall be charged fees in accordance with Administrative Directive 3.10, Fees, Reimbursements and Donations.

D. <u>Medical and Psychiatric Information</u>. Medical and psychiatric information shall be included in Inmate Personal Data. An inmate request for release of such information shall be reviewed by the local Health Services Unit to determine if the information jeopardizes the safety of the individual or other. If disclosure is refused, the Health Services unit shall inform the inmate of the reason for the refusal and the avenue of appeal.

   1. <u>Third Party Health Records</u>. The contract provider's health services staff shall ensure that an inmate request for a part of the health record that has been created by providers other than Department of Correction staff is specified on the Authorization for Release of Information form.

   2. <u>Inmates Under 18 Years of Age</u>. Written authorization, signed by an authorized representative, shall be required for the release of the health record of an inmate under 18 years of age with the exception of Section 8(D)(3) below.

   3. <u>HIV Testing Information Regarding Inmates Under 18 Years of Age</u>. An inmate, who is under the age of 18 years old, and has requested testing, examination or treatment for HIV and has requested that the inmate's parent or guardian not be informed, and the physician believes that the inmate would not submit to testing, examination or treatment if the parent or guardian were informed, and the physician has documented such in the health record, a minor shall have the right to authorize the release of only that personal health information which is related to testing for HIV infection or to the examination and/or treatment for HIV infection.

E. <u>Disclosure to Warden/Unit Administrator</u>. The responsible contract provider's health authority(s) shall provide the Warden with relevant information concerning an inmate's medical and mental health management, security and ability to participate in

programs. When an inmate suffers from a health condition that may result in a medical or mental health crisis, or risk of disease transmission to another, the responsible contract provider's health authority shall inform the Warden. The appropriate contract provider's health authority may have access to the confinement record if the contract provider's health authority believes such information may be relevant to the inmate's health or course of treatment.

F. **Disclosure to Classification Personnel**. Inmate health information provided by the contract provider's health care staff to classification personnel or classification systems shall be limited to the identification of restrictions required by the inmate's health condition and shall not include disclosure of health information specific to the inmate.

G. **Disclosure to the Commissioner**. The Commissioner of the Department of Correction and the Commissioner's legal Agency representatives, including the Attorney General's Office, shall have access to all available records as necessary for the performance of the Commissioner's duties, including the defense of the agency, in accordance with the law.

H. **Additional Disclosure**. Disclosure of HIV related information shall only be made as outlined in Administrative Directive 8.11, Human Immunodeficiency Virus Infection.

The Authorization for Release of Information form, CN 4401, containing the signature of the inmate or the inmate's authorized representative, shall be required prior to disclosure of an inmate's specifically designated health information to a named person or institution by the contract provider's health care staff.

I. **Inmate Workers**. An inmate shall not have any access to a health record except the inmate's own health record as outlined in this Directive. The contract provider's health care staff shall provide direct, close supervision of an inmate assigned to work in close proximity to health records.

J. **Corrections**. An inmate believing that information created by the Department of Correction is in error, or illegal to maintain, may request the Unit Administrator, in writing, to have that information corrected. The Unit Administrator should consult with the Director of Offender Classification and Population Management prior to making a decision. Upon a determination of the inmate's claim, the Unit Administrator shall either correct or leave untouched the inmate's information. However, the original error may be corrected but shall not be erased. Information created by other departments or agencies and supplied to the Department of Correction, may only be corrected by the department or agency responsible for creating that information, e.g., the Office of Adult Probation, State Police, local police, FBI, etc.

6. **Public Disclosure**. The following guidelines shall be observed regarding the disclosure of information to the public. Any questions regarding the authorization to disclose particular information shall be forwarded to the Central Records Unit.

| DIRECTIVE NO. | EFFECTIVE DATE | PAGE | OF |
|---|---|---|---|
| 4.4 | March 9, 2001 | 5 | 6 |
| TITLE | | | |
| Access to Inmate Information | | | |

    A. **Conviction Information.** The public, including the press, may be allowed to receive Conviction Information.

    B. **Arrest Information.** The public, including the press, may be allowed to receive arrest information regarding any person other than a juvenile. Information contained on the RT80 screen, Public Information Disclosure, with the exception of non-conviction information, may be disclosed.

    C. **Additional Information.** A request for any additional information shall be referred to the Unit Administrator who shall review and consult with the Department's Public Information Officer to determine if that information may be released to the requestor and if the inmate's authorization is necessary. If necessary, an inmate may authorize the release of information utilizing Release of Information form, CN 4401, which shall be maintained as a permanent part of the inmate's master file.

7. **Disclosure to Other Criminal Justice Agencies.** Criminal History Record Information, Current Offender Information, and Inmate Personal Data shall be available to other criminal justice agencies for: (1) screening applicants for employment; (2) commencement of prosecution, determination of pretrial or post-trial release or detention, the adjudication of criminal proceedings, or the preparation of a presentence report; (3) supervision by a criminal justice agency of an individual who has been committed to the custody of that agency; (4) the investigation of an individual who has already been arrested or detained; (5) the development of investigative leads for particular criminal offenses, if access is limited to criminal justice officials with both a need to know and a right to have access to such information; (6) the alerting of an official or employee of a criminal justice agency that a particular individual may present a danger to that person's safety or for similar essential purposes; or (7) such other legitimate criminal justice purposes as the Commissioner deems appropriate.

8. **Disclosure to Non-Criminal Justice Government Agencies and Elected or Appointed Public Officials.** An employee of Non-Criminal Justice government agencies and elected or appointed public officials may have access to any available information providing it does not violate any policy, regulation or law, and it does not jeopardize the safety of the public, staff or inmate or the security of the facility. Any staff member receiving a request for inmate information from one of these sources must report that request to the Unit Administrator as per Administrative Directive 1.4, Cooperation with Community and Government Organizations.

9. **Disclosure for Research.** Any inmate information except Non-Conviction Information, Intelligence Information and Investigation Information, can be made available to qualified persons and organizations for research, evaluative and statistical purposes. Such persons or organizations shall be granted access under the provisions of Administrative Directive 1.7, Research. Whenever such information is made available, the identification component of the information shall be deleted.

10. <u>Security</u>.

   A. <u>Manually Stored Information</u>. Access to manually stored information shall be restricted as per Section 4 of this Directive. All such active information shall be secured in a room designated for that purpose. Only staff authorized by the Unit Administrator shall be allowed access to that designated area.

   B. <u>Computer Terminals</u>. All computer terminals providing any inmate information, and associated peripherals, such as a printer, shall be maintained in a secure area. Only Correction employees, other authorized criminal justice agency employees, and authorized volunteers trained in the operation of the appropriate equipment may have access to and use these systems. No inmate shall be allowed to use any computer terminal providing access to inmate information.

   C. <u>Use of Passwords</u>. A password or other security procedures to limit access to persons on a need to know basis shall be used to protect information.

11. <u>Audits</u>. The Offender Classification and Population Management unit shall conduct periodic audits of collected information by checking manual or computer entries to make certain that provided information is both accurate and complete.

12. <u>Training</u>. Whenever an employee is hired or promoted into a position which allows direct access to any inmate information, the Unit Administrator shall ensure the employee is specifically trained in the various categories of information the employee is required to access.

13. <u>Fees</u>. The Department may recover the reasonable costs of producing information in accordance with Administrative Directive 3.10, Fees, Reimbursements and Donations.

14. <u>Exceptions</u>. Any exception to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.