## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES MCKINNON | : | PRISONER |
| *Plaintiff,* | : | 3:03CV00944(RNC) |
| | : | |
| VS. | : | |
| | : | |
| YVONNE, ET AL. | : | |
| *Defendants.* | : | DECEMBER 6, 2004 |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
### OF THEIR MOTION TO DISMISS AMENDED COMPLAINT

The *pro se* inmate plaintiff[1] sues the defendants,  sues the defendants, Yvonne Collette, Pamela Shea, Cheryl Schwink, Pauline Husband, Nita Donavan, Jim Taylor and Amonda Hannah[2], all employed by the State of Connecticut Department of Correction, pursuant to Title 42 USC § 1983, apparently alleging that the defendants violated his rights under the Fourth and Eighth Amendments of the United States Constitution.  It should be noted that it is difficult to ascertain exactly what it is the plaintiff is alleging, since he fails to set forth his allegations as separate causes of action, rather he appears to set forth his allegations where he is listing and describing the parties to the action.  The plaintiff also fails to set forth any supporting facts, but

---

[1]     It should be noted that this *pro se* inmate plaintiff is a serial litigant.  Since the plaintiff's latest admission date of June 7, 2001 to the custody of the Connecticut Department of Correction, the plaintiff has filed fourteen federal lawsuits.  *See* Connecticut Department of Correction Inmate Information Sheet, Attachment A, and U.S. Party/Case Index Civil Name Search Results, Attachment B.

[2]     In his amended complaint, both in the case caption and in the list of parties, the plaintiff fails to provide the first name of Defendant Hannah, whom the plaintiff has indicated was employed by the Connecticut Department of Correction as a unit manager.  Defendant Hannah's first name is Amonda.

rather relies on his attached exhibits. *See* Amended Complaint. Thus, it appears that the plaintiff alleges that the defendants violated his aforementioned constitutional rights in four separate ways. First, the plaintiff appears to allege that on May 6, 2003, while the plaintiff was confined to Cheshire Correctional Institution, the plaintiff's medical records were delivered to the plaintiff without an envelope and without a confidential sticker by Correctional Officer Negron, who is not a named defendant to this lawsuit, thereby violating the plaintiff's right to privacy under the Fourth Amendment to the United States Constitution. Second, the plaintiff appears to allege that on July 17, 18 and 19 of 2003, while the plaintiff was confined to Cheshire Correctional Institution, Defendants Collette, Donovan and Taylor failed to provide the plaintiff with prescribed medications, thereby demonstrating deliberate indifference to the plaintiff's serious medical needs and thus violating the plaintiff's right against cruel and unusual punishment under the Eight Amendment to the United States Constitution. Third, the plaintiff appears to allege that while the plaintiff was confined to Cheshire Correctional Institution, Defendant Husband failed to permit the plaintiff to be examined by a specialist, thereby demonstrating deliberate indifference to the plaintiff's serious medical needs and thus violating the plaintiff's right against cruel and unusual punishment under the Eighth Amendment to the United States Constitution. Fourth, the plaintiff appears to allege that while the plaintiff was confined to Cheshire Correctional Institution, Correctional Treatment Officer James, who is not a named defendant to this lawsuit, opened one piece of the plaintiff's legal mail, thereby violating the plaintiff's right to privacy under the Fourth Amendment to the United States Constitution. The plaintiff sues the defendants in their individual capacities. The plaintiff appears to seek

declaratory relief, such as a declaratory judgment stating that the defendants violated the plaintiff's constitutional rights by being "reckless and careless with the plaintiff's life."  The plaintiff also appears to seek compensatory, punitive and nominal damages.

The defendants contend that there is no legal merit to the plaintiff's apparent claims for the following reasons:

I.A.    The defendants are entitled to sovereign immunity.

I.B.    The defendants are entitled to statutory immunity.

II.    The defendants are entitled to qualified immunity.

III.    The plaintiff has failed to exhaust his administrative remedies.

IV.    The plaintiff has failed to state a claim for compensatory damages pursuant to the Prison Litigation Reform Act under 42 U.S.C. § 1997e(e), since the plaintiff did not allege a physical injury.

V.    The plaintiff has failed to allege sufficient personal involvement on the part of the Defendants Shea, Schwink, and Hannah with respect to his medical record claim.

VI.    The plaintiff has failed to state a claim for a violation of his right to privacy under the Fourth Amendment with respect to his medical record claim.

VII.    The plaintiff has failed to state a claim for deliberate indifference under the Eighth Amendment with respect to his claim for failure to provide prescription medication.

VIII.    The plaintiff has failed to state a claim for deliberate indifference under the Eighth Amendment with respect to his claim for denial of care by a specialist.

IX.     The plaintiff has failed to state a claim for a violation of his right to privacy under the Fourth Amendment with respect to his legal mail claim.

X.     Any attempt by the plaintiff to hold Correctional Officer Negron and Correctional Treatment Officer James legally responsible regarding plaintiff's medical record claim and legal mail claim respectively are improper, as neither Negron nor James are named defendants to this law suit.

## ARGUMENT

## STANDARD OF REVIEW

When considering a Rule 12(b) motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Easton v. Sundram*, 947 F.2d 1011, 1014-15 (2d Cir. 1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992).  The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *Younger v. Chernovetz*, 792 F.Supp. 173, 174 (D.Conn. 1992) (quoting *Ryder Energy Distribution v. Merrill Lynch commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)).  Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted.  *See Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Frasier v. General Electric Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991).

Understandably, the Court is obliged to give the plaintiff's *pro se* allegations, however inartfully pleaded, a liberal construction. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972); *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983). *But see, Davidson v. Flynn,* 32 F.3d 27 (2d Cir. 1994) (experienced *pro se* litigant familiar with the requirements of the legal system may be held to a higher standard). This well-established canon does not, however, relieve a *pro se* litigant of his obligation to set forth a "short and plain" statement of his claims. *See* Federal Rules of Civil Procedure 8(a)(2); *Salahuddin v. Cuomo*, 861 F.2d 40 (2d Cir. 1988). Even *pro se* litigants must make clear to the court their claims and the facts that they believe entitle them to specific relief. *Salahuddin v. Coughlin*, 781 F.2d 24, 29 (2d Cir. 1986).

In the Second Circuit, it is well-established that mere "conclusory allegation[s] without evidentiary support or allegations of particularized incidents, [do] not state a valid claim." *Brown v. City of Oneonta,* 235 F.3d 769, 773 (2d Cir. 2000). *Hall v. Dworkin,* 824 F. Supp. 1403, 1412 (N.D.N.Y. 1993) (complaints relying on civil rights statutes are insufficient if they merely include a "litany of general conclusions"), *citing Barr v. Abrams,* 810 F.2d 358, 362 (2d Cir. 1987). *Cf. Martin v. N.Y. State Dep't of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir. 1972) ("a complaint consisting of nothing more than naked assertions fails to state a claim"). Where the plaintiff's complaint is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised," it may safely be dismissed. *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). *See also, Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir. 1990), *cert. denied,* 499 U.S. 937, 111 S.Ct. 1389, 113 L.Ed.2d 446 (1991) (complaints based on violation of

constitutional right must contain more than conclusory allegation to avoid dismissal); *Flaherty v. Coughlin*, 781 F.2d 10, 13 (2d Cir. 1983) (certain claims are so easily made and can precipitate such protracted proceedings with such disruption of governmental functions that . . . detailed fact pleading is required to withstand a motion to dismiss); *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977) (complaints containing only conclusory, vague or general allegations of wrongdoing on the part of government officials will be dismissed).  Thus, in practice, "a complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under *some* viable legal theory." *Telectronics Proprietary, Ltd. v. Medtronics, Inc.*, 687 F.Supp. 832, 836 (S.D.N.Y. 1988) (citations omitted).  A complaint which fails to do so is subject to dismissal for having failed to state a claim upon which relief can be granted.

In applying supplemental jurisdiction over pendent state law claims, federal courts must apply state substantive law.  *See, e.g., Promisel v. First Am. Artificial Flowers, Inc.,* 943 F.2d 251, 257 (2d Cir. 1991), *cert. denied,* 502 U.S. 1060, 117 L. Ed. 2d 110, 112 S. Ct. 939 (1992). Thus, "a state law depriving its courts of jurisdiction over a state law claim also operates to divest a federal court of jurisdiction to decide the claim." *Moodie v. Federal Reserve Bank,* 58 F.3d 879, 884 (2d Cir. 1995).

I.    **THE DEFENDANTS ARE ENTITLED TO BOTH SOVEREIGN AND STATUTORY IMMUNITY FROM LIABILITY FOR ANY STATE CONSTITUTIONAL AND COMMON LAW CLAIMS.**

To the extent that the plaintiff's amended complaint can be read to assert any pendent claims against the state defendants, in violation of either the Connecticut Constitution or

common law, the state defendants are entitled to dismissal of these claims under the common law doctrine of sovereign immunity and the statutory immunity provided by Connecticut General Statutes § 4-165.[3]

### A.    <u>Sovereign Immunity</u>.

In the instant lawsuit, the plaintiff appears to direct his allegations of wrongdoing at the defendants in their individual capacities.  *See* Amended Complaint, pg. 1.  Although the plaintiff sues the defendants in their individual capacities, that is not dispositive of the matter under state law.

In *Miller v. Egan,* 265 Conn. 301, 828 A.2d 549 (2003)*,* the Connecticut Supreme Court recently examined the question of whether a pleading could reasonably be construed to sue a series of state defendants in their official capacities despite a claim on the part of the plaintiff that the suit was meant only to sue the defendants in their individual capacities.  Recognizing that, under state jurisprudence, the construction of a pleading was a question of law, over which it exercised plenary review, the Supreme Court applied the test set forth in *Spring v. Constantino,* 168 Conn. 563, 568, 362 A.2d 871 (1975), to determine in what capacity the defendants had been sued.  The Court concluded that, based upon the nature of the allegations in the complaint,

---

[3]      General Statutes § 4-165 provides, in relevant part, as follows:

> **Immunity of state officers and employees from personal liability.** No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment.

the plaintiff had sued the defendants in their official capacities, and that, as such, they were entitled to sovereign immunity from suit.

In examining the allegations of the complaint, the Court first observed that "the fact that the state is not named as a defendant does not conclusively establish that the action is not within the principle which prohibits actions against the sovereign without its consent …." *Miller*, 265 Conn. at 308, *citing Spring v. Constantino, supra,* at 568. Rather, the Court observed, "the vital test is to be found in the essential nature and effect of the proceeding." *Id.* It then set forth four criteria to determine whether an action is "in effect, one against the state [which] cannot be maintained without its consent: (1) a state official has been sued; (2) the suit concerns some matter in which that official represents the state; (3) the state is the real party against whom relief is sought; and (4) the judgment, though nominally against the official, will operate to control the activities of the state or subject it to liability." *Id.*

The *Miller* court then went on to reiterate long-standing common law principles surrounding the application of the doctrine of sovereign immunity:

> We have long recognized the validity of the common-law principle that the state cannot be sued without its consent …. *Horton v. Meskill,* 172 Conn. 615, 623, 376 A.2d 359 (1977). We have also recognized that *because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. Fetterman v. University of Connecticut,* 192 Conn. 539, 550-51, 473 A.2d 1176 (1984) ….
>
> We have held that a plaintiff seeking to circumvent the doctrine of sovereign immunity must show that: (1) the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity; M*artinez v. Department of Public*

*Safety,* 263 Conn. 74, 85-86, ___ A.2d ___ (2003)]; or (2) in an action for declaratory or injunctive relief, the state officer or officers against whom such relief is sought acted in excess of statutory authority, or pursuant to an unconstitutional statute. *Horton v. Meskill, supra,* 172 Conn. 624 ….

Sovereign immunity rests on the principle and on the hazard that the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds and property. *Pamela B. v. Ment,* 244 Conn. 296, 328, 709 A.2d 1089 (1998). Because a court may tailor declaratory and injunctive relief so as to minimize any such interference, and in order to afford an opportunity for voluntary compliance with the judgment, actions that seek injunctive or declaratory relief against a state officer acting in excess of statutory authority or pursuant to an unconstitutional statute do not conflict with the policies underlying the doctrine of sovereign immunity. *Doe v. Heintz,* 204 Conn. 17, 32, 526 A.2d 1318 (1987) ….

This exception does not apply, however, to claims against the state for monetary damages. *See Krozser v. New Haven,* 212 Conn. 415, 423, 562 A.2d 1080 (1989) (plaintiff seeking money damages against state, alleging that defendant's actions violated his constitutional rights, required to seek waiver of immunity from claims commissioner before bringing action in court), *cert. denied,* 493 U.S. 1036, 110 S.Ct. 757, 107 L.Ed.2d 774 (1990); *Barde v. Board of Trustees,* 207 Conn. 59, 60-61, 539 A.2d 1000 (1988) (treating plaintiff's claims for injunctive relief and money damages separately; as to money damages, plaintiff required to exhaust administrative remedies by proceeding through claims commissioner; as to injunctive relief, plaintiff's claims of constitutional violations not sufficiently established); *Doe v. Heintz, supra,* 204 Conn. 36-37 (sovereign immunity barred plaintiff's claims for attorney's fees and costs, despite plaintiff's allegations that state officer was acting pursuant to an unconstitutional statute); *Fetterman v. University of Connecticut, supra,* 192 Conn. 553, (treating claims for monetary damages and declaratory relief separately and concluding that counts

> "requesting relief by way of damages" were barred by doctrine of
> sovereign immunity).

*Miller, supra,* 265 Conn. at 313-16. (internal quotations omitted) (emphasis supplied).

Here, it is clear from the amended complaint that the State of Connecticut Department of Correction defendants are being sued over matters involving the performance of their official duties on behalf of the State of Connecticut. In addition, because "a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state," *Miller, supra,* the third prong of the *Miller* test is satisfied. Finally, if a judgment is entered against the State of Connecticut Department of Correction defendants, Connecticut General Statute § 5-141d requires that the State of Connecticut indemnify its officers and employees for any monetary damages adjudged.[4] Having met each of the prongs of the applicable test, any supplementary state law claims must be found to have been filed against the State of Connecticut Department of Correction defendants in their official capacities (that is, against the "state"), regardless of a liberal interpretation of the complaint to the contrary.

Connecticut law recognizes only two situations in which it is unnecessary for a plaintiff to first seek and obtain permission to sue the state from the claims commissioner before filing

---

[4] Connecticut General Statutes § 5-141d provides, in pertinent part, as follows:

> (a) The state shall save harmless and indemnify any state officer or employee, as defined in section 4-141, and any member of the Public Defender Services Commission from financial loss and expense arising out of any claim, demand, suit or judgment by reason of his alleged negligence or alleged deprivation of any person's civil rights or other act or omission resulting in damage or injury, if the officer, employee or member is found to have been acting in the discharge of his duties or within the scope of his employment and such act or omission is found not to have been wanton, reckless or malicious.

suit in court.  A plaintiff seeking to circumvent the doctrine of sovereign immunity must show that: (1) the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity; or (2) in an action for declaratory or injunctive relief, the state officer or officers against whom such relief is sought acted in excess of statutory authority, or pursuant to an unconstitutional statute.  *Miller, supra,* at 316-17.  The burden is on the plaintiff to "show" that his complaint fits within one or both of the enumerated exceptions.  *Id.,* at 314.

Here, however, the Connecticut legislature has not waived, either explicitly or by force of necessary implication, the state's sovereign immunity.  Moreover, the plaintiff does not claim that the defendants acted in excess of their statutory authority or pursuant to an unconstitutional statute.  As such, any such claims against the State of Connecticut Department of Correction defendants are properly construed under Connecticut law as having been filed against them in their official capacities -- that is, against the state -- and are barred by the doctrine of sovereign immunity.

### B.   <u>Statutory Immunity</u>.

Having determined that any pendent state law claims against the defendants are barred by the doctrine of sovereign immunity, it is unnecessary to examine whether the claims brought against them are likewise barred by the statutory immunity created by Connecticut General Statutes § 4-165.  *See Shay v. Rossi,* 253 Conn. 134, 180-81, 749 A.2d 1147 (2000), *overruled in part on other grounds, Miller v. Egan, supra,* 265 Conn. at 325.  However, even assuming *arguendo* that any state law claims were not barred by the doctrine of sovereign immunity, they would nonetheless be barred under § 4-165.

The outcome of the statutory immunity argument is controlled by the decision of the Connecticut Supreme Court in the case of *Martin v. Brady,* 261 Conn. 372, 802 A.2d 814 (2002). In *Martin,* the plaintiff alleged that defendant state police officers conducted an improper search of his home and seizure of his person in violation of his rights under Article 1, §§ 7 and 9 of the Connecticut Constitution.[5]  The sole issue on appeal was whether the defendant State Police officers were entitled to immunity from suit by virtue of statutory, personal immunity under Connecticut General Statutes § 4-165 and, therefore, were not liable to the plaintiff for their alleged acts of misconduct.  *Id.,* 261 Conn. At 373.

In the posture of that case, the Court deemed it necessary, in order to resolve the claim of statutory immunity, to examine the pleadings to decide whether the plaintiff had alleged sufficient facts with respect to personal immunity under § 4-165 to support a conclusion that the defendants were acting outside the scope of their employment or wantonly, recklessly or maliciously.  In *Martin*, the complaint alleged three separate instances of misconduct on the part of the State Police defendants.  The plaintiff alleged:  (1) that the defendants forcibly entered his home without a search warrant, striking him and pushing him to the floor after he submitted to arrest; (2) that the defendants searched his home pursuant to a search warrant obtained pursuant

---

[5]  The plaintiff in *Martin* also argued that suit was authorized against the defendant state police officers arguing that the Connecticut Supreme Court in *Binette v. Sabo*, 244 Conn. 23, 710 A.2d 688 (1998), had recognized a cause of action under article first, § 7 of the Constitution of Connecticut.  *See Martin*, *supra*, 64 Conn. App. 433, 780 A.2d 961 (2001), overruled on other grounds, 261 Conn. 372, 802 A.2d 814 (2002).  The *Martin* court rejected that argument, holding that *Binette* applied only to municipal defendants and did not waive sovereign immunity for state officials.

to a false affidavit; and (3) during the search, smashed windows and broke down doors. *Id.,* at 377.

The Court reasoned that, in order to determine if a state actor's conduct is caused in the discharge of his or her duties or within the granted state authority, it is necessary to examine the nature of the alleged conduct and its relationship to the duties incidental to the employment. *Id.,* at 378. The Court referred to its previous decisions in the cases of *Antinerella v. Rioux,* 229 Conn. 479, 499, 642 A.2d 699 (1994), *overruled in part on other grounds, Miller v. Egan, supra,* 265 Conn. at 325, where it found the defendant's conduct to fall outside the umbrella of immunity because "[t]he defendant's alleged conduct [in soliciting and accepting illegal kickbacks from his deputy sheriffs] was not designed to advance any interest of his employer, the state, and did not serve any legitimate state interest … [being] motivated by purely personal considerations entirely extraneous to his employer's interests," and in *Shay v. Rossi, supra,* at 174, where it determined that "the defendants, individuals employed by the state department of children and families, had acted beyond the scope of their employment when acting 'solely … to justify their own prior unjustified conduct, and not to carry out the government policy with which they were entrusted …,'" in determining that the allegations of improper search and seizure on the part of State Police officers, with which it was presently confronted, unlike the allegations in *Antinerella* and *Shay*, were *not* arguably outside the scope of employment of the police defendants. *Martin, supra,* at 378-79.

The Martin court next considered whether the plaintiff had sufficiently alleged facts so as to cause the defendants' conduct to fall within the statutory exception for "wanton, reckless or

malicious" conduct. Concluding that the plaintiff had failed to carry his burden in this regard, the

Court reasoned as follows:

> we have never definitively determined the meaning of wanton,
> reckless or malicious as used in § 4-165. In the common-law
> context, however, we have stated: In order to establish that the
> defendants' conduct was wanton, reckless, willful, intentional and
> malicious, the plaintiff must prove, on the part of the defendants,
> the existence of a state of consciousness with reference to the
> consequences of one's acts . . . . [Such conduct] is more than
> negligence, more than gross negligence. . . . In order to infer it,
> there must be something more than a failure to exercise a
> reasonable degree of watchfulness to avoid danger to others or to
> take reasonable precautions to avoid injury to them. . . . It is such
> conduct as indicates a reckless disregard of the just rights or safety
> of others or of the consequences of the action. . . . [In sum, such]
> conduct tends to take on the aspect of highly unreasonable
> conduct, involving an extreme departure from ordinary care, in a
> situation where a high degree of danger is apparent." Indeed, in
> some instances, the mere fact that an official has acted in excess of
> his or her authority may suffice to prove that the conduct was
> wanton, reckless or malicious.

*Id.,* at 379 (Internal quotation marks omitted.). Observing that the facts alleged in the complaint

were not inconsistent with an exercise of the statutory authority provided to the State Police

pursuant to Connecticut General Statutes § 53a-22, the *Martin* Court concluded that there was no

allegation in the complaint from which it could infer that the defendants' conduct was indicative

of such a state of mind or that the conduct rose to such a level of egregiousness necessary to be

considered wanton, reckless or malicious. *Id.,* at 380.

The foregoing analysis of statutory immunity conducted by the *Martin* court in that case

is similarly dispositive of the allegations of the complaint herein. The allegations contained in

the *Martin* complaint and those in the instant lawsuit are similar in that the allegations set forth

14

in the *Martin* complaint and the allegations set forth in the instant lawsuit both allege "wrongful" actions which fall within the statutory duties of the defendants. The plaintiff's medical records claim, failure to provide prescription medicine claim, denial of care by a specialist claim, and legal mail claim are insufficient to defeat statutory immunity pursuant to § 4-165. Indeed, the distribution of an inmate's medical records to that inmate, the provision of medicine, the provision of medical care, and the distribution of legal mail fall squarely within the statutory duties of the Department of Correction. Moreover, the complaint is devoid of the sorts of allegations which would arguably carry the State of Connecticut Department of Correction defendants alleged conduct outside the scope of their official duties into an area which could reasonably be construed as wanton, reckless or malicious as the meaning of those terms have been interpreted by the Connecticut courts when examining the extent of immunity under § 4-165. Indeed, if the instant claims were to be held as beyond the scope of a Department of Correction employee's authority sufficient to overcome the bar of statutory immunity, the doctrine would be diminished to meaningless verbiage. Such was clearly not the intent of the legislature when it enacted on behalf of state officers and employees sued in their individual capacities the statutory protection from suit contained in § 4-165.

The state defendants are entitled to the cloak of sovereign and statutory immunity on any pendent state law claims. Accordingly, the plaintiff is required to file any state law claims before

the Claims Commissioner in order to seek and, if possible, obtain a waiver of sovereign and/or

statutory immunity.[6]

## II.    THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FOR THEIR ACTIONS AS ALLEGED IN THE PLAINTIFF'S COMPLAINT.

The shield of qualified immunity generally protects government officials from liability

for damages on account of their performance of discretionary official functions "insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct.

2727, 2738, 73 L.Ed.2d 396 (1982); *LaBounty v. Coughlin,* 137 F.3d 68, 73 (2d Cir. 1998). The

availability of the defense turns upon the "objective legal reasonableness" of the allegedly

unlawful official action, "assessed in light of the legal rules that were clearly established at the

time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d

523 (1987) (quoting *Harlow v. Fitzgerald,* 457 U.S. at 818-19, 102 S.Ct. at 2739). *See also,*

*Glass v. Mayas,* 984 F.2d 55, 57 (2d Cir. 1993). The qualified immunity defense is intended to

"strike a fair balance between (1) the need to provide a realistic avenue for vindication of

constitutional guarantees, and (2) the need to protect public officials who are required to exercise

their discretion and the related public interest in encouraging the vigorous exercise of official

authority." *Lee v. Sandberg,* 136 F.3d 94, 100 (2d Cir. 1997) (citations omitted). The rule serves

to protect government officials from charges that they knowingly violated standards that were in

---

[6]    Indeed, even assuming that the plaintiff obtains a waiver of the State's sovereign or statutory immunity through the process established under Chapter 53 of the Connecticut General Statutes, the waiver of immunity is limited to a trial to the court held in the Superior Courts of the State of Connecticut. *See* Conn. Gen. Stat. § 4-160.

fact unknowable." *Havekost v. U.S. Dept. of Navy,* 925 F.2d 316 (9th Cir. 1991) (citations omitted).

Because qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation," where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 252 (2001), *citing Mitchell v. Forsyth,* 472 U.S. 511, 526, 86 L.Ed. 2d 411, 105 S. Ct. 2806 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.,* 533 U.S. at 201.  As a result, the Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation.  *Id., citing Hunter v. Bryant,* 502 U.S. 224, 227, 116 L. Ed. 2d 589, 112 S. Ct. 534 (1991) (*per curiam*).

In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence.  According to *Saucier*, a court required to rule upon the qualified immunity issue must first consider this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  *Id., citing Siegert v. Gilley,* 500 U.S. 226, 232, 114 L. Ed. 2d 277, 111 S. Ct. 1789 (1991).  As explained by the Court in *Saucier,*

> In the course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established. This is the process for the law's elaboration from case to case, and it is one reason for our insisting

> upon turning to the existence or nonexistence of a constitutional right as the first inquiry.  The law might be deprived of this explanation were a court simply to skip ahead to the question whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case.

*Id.,* 533 U.S. at 201.

If no constitutional right would have been violated were the allegations established, *Saucier* instructs that there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.  *Id.,* 501 U.S. at 201.  This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable.  As more fully articulated by the U.S. Supreme Court in *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002),

> Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful.  For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id.,* 536 U.S. at 739, (internal citations and quotations omitted).  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *Saucier v. Katz, supra.*  If

the law did not put the officer on notice that his conduct would be clearly unlawful, judgment based on qualified immunity is appropriate.  *Id.*

Of course, there is no definitive guide as to when a right is clearly established.  Thus, while the defendants do not question the existence of a inmate's Fourth Amendment and Eight Amendment rights generally,

> the relevant inquiry is not whether the defendants should have known that there was a federal right, in the abstract ..., but whether the defendants should have known that the specific actions complained of violated  ... [that right].  Such an inquiry requires that a court define the constitutional right with some specificity.  If the right is defined too broadly, plaintiff would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.

*Lewis v. Cowen,* 165 F.3d 154, 167 (2d Cir. 1999) (internal quotations and citations omitted).  In the absence of controlling precedent, decisions from other circuits must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting.  *Marsh v. Arn,* 937 F.2d 1056, 1068 (6th Cir. 1991) (citations omitted).[7]

---

[7]     As stated by the Second Circuit in *Poe v. Leonard,* 282 F.3d 123 (2nd Cir. 2002), "[i]t is unclear the extent to which we may rely on the case law of other circuits to determine whether the law was clearly established."  *Id.,* 282 F.3d at 141, n. 15.  Accordingly, in those cases where the Second Circuit has relied upon the law established in other circuits as a guide for its own legal analysis, it has done so only where our precedent had foreshadowed the development of the relevant standards that other circuits had clearly established.  *Id., citing Varrone v. Bilotti*, 123 F.3d 75 (2d Cir. 1997).

Assuming that the factual allegations in a particular case demonstrate that there exists an underlying constitutional right, and that this right was clearly established in a particularized sense at the time the defendants acted, the final inquiry which must be undertaken in the qualified immunity analysis is the question of whether, despite the nature of the constitutional right at issue, a reasonable officer could have been mistaken as to the legal constraints upon his conduct.  If such a mistake as to the legal constraints upon his conduct was objectively reasonable, the defendant is nonetheless entitled to qualified immunity.

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular [governmental] conduct.  It is sometimes difficult for an [official] to determine how the relevant legal doctrine [...] will apply to the factual situation the [official] confronts.    If the [official's] mistake as to what the law requires is reasonable, however, the [official] is entitled to the immunity defense.

*Saucier v. Katz, supra.  See also, Malley v. Briggs,* 475 U.S. 335, 343, 89 L.Ed.2d 271, 106 S.Ct. 1092 (1986) (qualified immunity leaves ample room for mistaken judgments).  Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law, or those who act where "the law clearly proscribed the actions" taken."  *Saucier, supra,* (quoting *Anderson v. Creighton,* 483 U.S. at 638-39).  This aspect of the doctrine of qualified immunity recognizes that law enforcement officers are only human, and inevitably, accidents and mistakes of judgment will happen.  Such mistakes alone do not open officers to personal liability.  *Wren v. Towe,* 130 F.3d 1154, 1159 (5th Cir. 1997), *cert. denied,* 525 U.S. 815, 142 L. Ed. 2d 40, 119 S. Ct. 51 (1998); *accord, Pritchett v. Alford,* 973 F.2d 307, 313 (4th Cir. 1992) ( indicating that

qualified immunity affords tolerance for mistakes of judgment traceable to unsettled law, faulty

information, or contextual exigencies).  Accordingly,

> In cases involving the conduct of police officials, … even where
> the plaintiff's federal rights and the scope of the official's
> permissible conduct are clearly established, the qualified immunity
> defense protects a government actor if it was "objectively
> reasonable" for him to believe that his actions were lawful at the
> time of the challenged act . . . .  The objective reasonableness test
> is met - and the defendant is entitled to qualified immunity - if
> officers of reasonable competence could disagree on the legality of
> the defendant's actions . . . .  In qualified immunity cases, we are
> not concerned with the correctness of the defendants' conduct, but
> rather with the "objective reasonableness" of their chosen course of
> action given the circumstances confronting them at the scene . . . .
> [W]hen the factual record is not in serious dispute . . . [t]he
> ultimate legal determination whether . . . a reasonable police
> officer should have known he acted unlawfully is a question of law
> better left for the court to decide.

*Lennon v. Miller,* 66 F.3d 416, 420-21 (2d Cir. 1995) (quotations and internal citations omitted);

*accord, Oliviera v. Mayer,* 23 F.3d 642, 649 (2d Cir. 1994), *cert. denied,* 513 U.S. 1076, 115

S.Ct. 721, 130 L.Ed.2d 627 (1995) (immunity ordinarily should be decided by the court in those

cases where the facts concerning the availability of the defense are undisputed).

A review of the plaintiff's four distinct claims which assert that he was denied his Fourth

and Eighth Amendment Rights is illustrative.  First, an inmate has no constitutional right to

receive his medical records in an envelope.  *See* This Memorandum, Section VI.  Second, an

inmate has no constitutional right to receive the prescription medication of his choosing.  *See*

This Memorandum, Section VII.  Third, an inmate has no constitutional right to the medical

doctor of his choosing.  *See* This Memorandum, Section VIII.  Fourth, a single instance of

interference with an inmate's legal mail does not constitute a claim cognizable under 42 U.S.C. §

1983.  *See* This Memorandum, Section IX.  Therefore, an analysis of the plaintiff's allegations

coupled with an analysis of the relevant law establishes that the defendants are entitled to

qualified immunity for their actions.

Thus, we urge the court to dismiss the plaintiff's complaint on the basis of qualified

immunity.

### III.    THE PLAINTIFF'S LAWSUIT IS BARRED FOR FAILURE TO EXHAUST HIS PRISON ADMINISTRATIVE REMEDIES UNDER THE PRISON LITIGATION REFORM ACT OF 1995

The plaintiff alleges that the defendants  violated his rights under the Fourth and Eighth

Amendments in the following ways:    1.  On May 6, 2003, while the plaintiff was confined to

Cheshire Correctional Institution, the plaintiff's medical records were delivered to the plaintiff

without an envelope and without a confidential sticker by Correctional Officer Negron, who is

not a named defendant to this lawsuit; 2.  On July 17, 18 and 19 of 2003, while the plaintiff was

confined to Cheshire Correctional Institution, Defendants Collette, Donovan and Taylor failed to

provide the plaintiff with prescribed medications; 3.   While the plaintiff was confined to

Cheshire Correctional Institution, Defendant Husband failed to permit the plaintiff to be seen by

a specialist; 4.  On August 4, 2003, Correctional Treatment Officer James, who is not a named

defendant to this lawsuit, opened one piece of the plaintiff's legal mail.  It is the position of the

defendants that this action is barred for failure to exhaust prison administrative remedies under

the Prison Litigation Reform Act of 1995.

With regard to any of a prisoner's federal constitutional rights, the United States Supreme Court recently ruled that Connecticut prisoners must exhaust their prison administrative remedies before bringing suit as required by the Prison Litigation Reform Act of 1995, 45 U.S.C. § 1997e(a) (PLRA); *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 982, 152 L.Ed.2d 12 (2002). Exhaustion is required regardless of whether the administrative remedy provides for monetary awards or might, for some other reason, be deemed futile. *Booth v. Churner*, 532 U.S. 731, 215 S.Ct. 1819, 149 L.Ed.2d 958 (2001). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, *supra* at p. 532. The exhaustion requirement also applies to claims for inadequate medical treatment. *See O'Neill v. Bush*, No. 3:00CV1202(RNC)(Ruling and Order), Attachment C; *Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled in part by Porter v. Nussle, supra* at 532.

The PLRA requires that the inmate exhaust all available remedies, including appeals, before suit can be filed. *Booth v. Churner*, *supra* at 735; *Berry v. City of New York*, 2002 U.S. Dist. LEXIS 10520 (S.D.N.Y. 2002); *Reyes v. Punzal*, 206 F. Supp. 2d 431 (W.D.N.Y. 2002); *Alvarez v. United States*, 2000 U.S. Dist. LEXIS 6079 (S.D.N.Y. 2000); *Gentry v. Maxwell* 2002 U.S. App. LEXIS 9637 (6th Cir. 2002); *Flath v. Chavez*, 2001 U.S. App. LEXIS 18125 (6th Cir. 2001); *Thaddeus-X v. Williams*, 2000 U.S. App. LEXIS 9664 (6th Cir. 2000); *Utley v. Hiatte*, 2000 U.S. App. LEXIS 5255 (6th Cir. 2000); *Shugart v. Fleming*, 2002 U.S. LEXIS 1611 (N.D. Tex. 2002); *Hernandez-Salazar v. FMC Jail Unit*, 2002 U.S. Dist. LEXIS 1169 (N.D. Tex. 2002); *McCrew v. Calvo*, 2002 U.S. Dist. LEXIS 5900 (N.D. Cal. 2002); *Boyd v. Dept. of*

*Correction,* 2000 U.S. Dist. LEXIS 10806 (E.D. Pa. 2000); *Poer v. Miles*, 2000 U.S. LEXIS 20620 (W.D. Tex. 2000); *Tripp v. Carter*, 1999 U.S. LEXIS 16487 (N.D. Ill. 1999).

Where a plaintiff has several grievable issues, he must demonstrate exhaustion of each one, or his complaint will be dismissed for failure to exhaust administrative remedies as to any issue that was not so grieved. *See Vines v. Lojkuc*, No. 3:01CV361 (WWE) (HBF) (Memorandum of Decision, August 30, 2002), Attachment D.

The State of Connecticut Department of Correction has administrative remedies applicable to the plaintiff's constitutional claims – a grievance procedure for all manner of prison life, including medical grievances. DOC Directive 9.6, Sections 14, 15, 16, and 17, Medical Grievances, Level 1 Review, Level 2 Review, Level 3 Review, Attachment E. The Department of Correction also has a grievance process regarding other aspects of prison life such as: 1. A grievance procedure regarding the interpretation and application of policies, rules and procedures of the Department of Correction, DOC Directive 9.6, Sec. 6, Administrative Remedies, subdivision A(1), Attachment E; 2. A grievance procedure for individual employee actions, DOC Directive 9.6, Sec. 6, Administrative Remedies, subdivision A(3), Attachment E; 3. A grievance procedure for any other matter relating to access to privileges, programs and services, conditions of care or supervision and living unit conditions within the authority of the Department of Correction, DOC Directive 9.6, Sec. 6, Administrative Remedies, subdivision A(5), Attachment E; and 4. A grievance procedure for any and all other complaints of any nature concerning prison life, DOC Directive 9.6, Sec. 6, Administrative Remedies, subdivision A(7), Attachment E.

In the instant case, the plaintiff has indicated that he exhausted available administrative remedies, but he has failed to explain the steps taken and he only has written "Inmate Grievane [sic] Forms" in the space provided. *See* Amended Complaint, pg. 6. A review of the attached inmate grievance forms, reveals that the plaintiff has only attached inmate grievance forms regarding his medical records claim and his legal mail claim. Moreover, it is not even clear from the attached forms that the plaintiff did, in fact, exhaust his administrative remedies with respect to his medical records claim and his legal mail claim. Even if it is determined that the attached inmate grievance forms are sufficient to prove exhaustion with respect to the plaintiff's medical records claim and legal mail claim, the plaintiff has completely failed to even allege, let alone prove, exhaustion with respect to his remaining claims, the failure to provide prescription medication claim, and the denial of care by a specialist claim. Therefore, since the plaintiff has failed to prove that he exhausted his administrative remedies regarding his medical records claim and legal mail claim, and the plaintiff has failed to even allege that he exhausted his administrative remedies regarding his failure to provide prescription medication claim and his denial of care by a specialist claim, the plaintiff has failed to exhaust his administrative remedies.

Thus, we urge the court to dismiss the plaintiff's entire complaint for failure to exhaust his prison administrative remedies.

IV.     **SINCE THE PLAINTIFF DID NOT ALLEGE PHYSICAL INJURY, HIS CLAIM FOR COMPENSATORY DAMAGES IS PRECLUDED PURSUANT TO THE PRISON LITIGATION REFORM ACT UNDER 42 U.S.C. § 1997e(e)**

The plaintiff does not appear to allege that he was ever physically harmed in any way by either any employee of the Department of Correction or any other inmate while the plaintiff was

confined to Cheshire Correctional Institution.  The plaintiff solely complains about the delivery of his medical records, the failure to provide his prescription medication, the denial of care by a specialist, and the opening his legal mail.  Although the plaintiff does set forth two apparent medical claims, he never alleges that he was physically harmed either by the failure to provide prescription medication or by the denial of care by a specialist.  At most, the plaintiff alleges that he feared getting depressed if he did not receive his medication.  *See* Amended Complaint, Section A – Parties, ¶ 6.

The Prison Litigation Reform Act provides:

No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).  The Second Circuit has held that this provision does apply to constitutional claims.  *Thompson v. Carter*, 284 F.3d 411, 417-18 (2d Cir. 2001).  In its *Thompson* decision, the Second Circuit followed some other circuits in holding that this prohibition extends only to claims for compensatory damages, and does not extend to claims for punitive or nominal damages, or to claims for declaratory or injunctive relief.  *Id.* at 418.  According to the law as interpreted by the Second Circuit, then, any of the plaintiff's claims for compensatory damages are subject to dismissal under § 1197e(e).  The plaintiff in this case does appear to seek nominal and punitive damages.

Thus, the defendants move to dismiss the plaintiff's claims for compensatory damages pursuant to § 1197e(e).

V.    **THE PLAINTIFF FAILS TO ALLEGE ADEQUATE PERSONAL INVOLVEMENT ON THE PART OF DEFENDANTS SHEA, SCHWINK, AND HANNAH WITH RESPECT TO HIS MEDICAL RECORDS CLAIM**

The plaintiff appears to allege only that Defendants Shea, Schwink and Hannah held supervisory positions within the Department of Correction on May 6, 2003, the day that Correctional Officer Negron allegedly delivered the plaintiff's medical records to the plaintiff without an envelope and with a confidential seal.

Regarding Defendant Shea specifically, the plaintiff only alleges that Defendant Shea held the position of a Health Service Administrator at Cheshire Correctional Institution at the time in question.  Not only does the plaintiff fail to allege that Defendant  Shea had any sort of personal involvement in the delivery of the plaintiff's medical records, but the plaintiff also fails to allege that Defendant Shea even had any sort of control or supervisory authority or the compiling, copying, packaging and/or delivery of this plaintiff's medical records.  *See* Amended Complaint, Section A – Parties, ¶ 3.[8]  The plaintiff does allege that he wrote Defendant Shea a letter regarding his medical record claim and that she responded.  *See* Amended Complaint, Section A – Parties, ¶ 7.

Regarding Defendant Schwink specifically, the plaintiff only alleges that Defendant Schwink held the positions of nurse and grievance coordinator in the medical department of Cheshire Correctional Institution at the time in question.  Not only does the plaintiff fail to allege that Defendant  Schwink had any sort of personal involvement in the delivery of the plaintiff's

---

[8]    The plaintiff has numbered the paragraph dealing with Defendant Shea "3"and the paragraph dealing with Defendant Schwink "3."

medical records, but the plaintiff also fails to allege that Defendant Schwink even had any sort of control or supervisory authority or the compiling, copying, packaging and/or delivery of this plaintiff's medical records. *See* Amended Complaint, Section A – Parties, ¶ 3.

Regarding Defendant Hannah specifically, the plaintiff only alleges that Defendant Hannah held the position of unit manager in a high security status unit in Cheshire Correctional Institution at the time in question. Not only does the plaintiff fail to allege that Defendant Hannah had any sort of personal involvement in the delivery of the plaintiff's medical records, but the plaintiff also fails to allege that Defendant Hannah even had any sort of control or supervisory authority or the compiling, copying, packaging and/or delivery of this plaintiff's medical records. *See* Amended Complaint, Section A – Parties, ¶ 7. The plaintiff does allege that Correctional Officer Negron, the officer who allegedly delivered the aforementioned records, told the plaintiff that the unit manager provided the medical records without an envelope, but the plaintiff never names that unit manger.

The aforementioned allegations are insufficient to sustain a cause of action against the defendants under 42 U.S.C. § 1983.

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected,' the complainant to a deprivation of rights secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976)(quoting 42 U.S.C. § 1983). Otherwise put, a "plaintiff must...allege a tangible connection between the acts of the defendants and the injuries suffered. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Thus, in order to be held liable under 42 U.S.C. § 1983, the defendant must have a role in subjecting the plaintiff to a deprivation of a

federally guaranteed right.  That is to say, a showing of personal involvement is a necessary prerequisite for establishing liability under § 1983.  *See, e.g., Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987);  *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973), *rev'd on other grounds, Graham v. Connor,* 490 U.S. 386 (1989); *McKinnon v. Patterson*, 568 F.2d 930 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978).

In the prison context, "[a] supervisory official is liable for constitutional violations if he or she (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal ; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation." *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997).

The complaint is devoid of allegations that Defendants Shea, Schwink or Hannah had any involvement with the compiling, copying, packaging and/or delivery of the plaintiff's medical records without an envelope.  The plaintiff's complaint is deficient.  It appears that plaintiff is seeking to hold these defendants liable solely because they hold supervisory authority in the Connecticut Department of Correction.  These allegations simply do not suffice.  In order to state cognizable § 1983 claim, therefore, the plaintiff must allege, and ultimately prove, "personal involvement of [the defendants] sufficient to support their liability for wrongful acts," not merely their "linkage in the...chain of command." *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985). Moreover, the Supreme Court has ruled that the doctrine of respondeat superior does not apply under 42 U.S.C. § 1983.  *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 692-95 (1978).

Additionally, the fact that plaintiff may have complained to Defendant Shea and that she may have responded is immaterial. In fact, "The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability." *Watson v. McGinnis*, 964 F.Supp. 127, 130 (S.D.N.Y. 1997). Indeed, "[i]t is well established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Higgins v. Artuz*, 1997 WL 46505 at *7 (S.D.N.Y. 1997); *See also, e.g., Rivera v. Goord*, 119 F. Supp. 2d 327, 344 (S.D.N.Y. 2000) (Defendant "merely asserts that he wrote to these [supervisory] defendants [including the Commissioner and Supt.] complaining about the conduct of various Medical and Correctional Defendants and that his complaints were ignored. These allegations are insufficient to hold these Official/Supervisory Defendants liable under § 1983."); *Woods v. Goord*, 1998 WL 740782 at *6 (S.D.N.Y. Oct. 23, 1998) ("Receiving letters or complaints, however, does not render [Supt.] Artuz personally liable under § 1983."); *Cox v. Colgane*, 1998 WL 148424 at *9 (S.D.N.Y. Mar. 27, 1998) (ignoring letter and request for action not sufficient). Thus, even if plaintiff did complain to Defendants Shea, and even if that complaint was ignored, Defendant Shea cannot be liable under 42 U.S.C. § 1983. Merely responding to a letter regarding a past incident does not personally involve the person who responded to the letter in the past incident.

In sum, therefore, plaintiff fails to state a viable claim against the Defendants Shea, Schwink and Hannah. Thus, we urge the court to dismiss any the plaintiff's claims against Defendants Shea, Schwink and Hannah.

**VI.    THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR A VIOLATION OF HIS RIGHT TO PRIVACY UNDER THE FOURTH AMENDMENT WITH RESPECT TO HIS MEDICAL RECORDS CLAIM**

The plaintiff claims that on May 6, 2003, while the plaintiff was confined to Cheshire Correctional Institution, the plaintiff's medical records were delivered to the plaintiff without an envelope and without a confidential sticker, by Correctional Officer Negron, who is not a named defendant to this lawsuit, thereby violating the plaintiff's right to privacy under the Fourth Amendment of the United States Constitution.  The plaintiff alleges that his medical records were delivered to him without an envelope only once.  The plaintiff never alleges that anyone, including Correctional Officer Negron, ever read his medical records.  The plaintiff never alleges that anyone ever publicized his medical records.  The plaintiff never alleges that his medical records were disclosed to a third party.  The plaintiff does not allege any damage as a result of this alleged delivery of medical records.  Additionally, it should be noted that the plaintiff attaches to his amended complaint, as Exhibit F, an inmate request form dated July 7, 2003 regarding his medical records, in which Warden Dzurenda responds to the plaintiff's inquiry by writing, "Mail is inspected (not read) for contraband unless it is clearly marked 'Legal Mail' then it is opened in the presence of the inmate."  *See* Amended Complaint, Exhibit F.

The aforementioned allegations are insufficient to state a claim for a violation of the plaintiff's right to privacy under the Fourth Amendment.

The United States Supreme Court in *Hudson v. Palmer*, 468 U.S. 517 (1984), held that the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.  The *Hudson* Court explained that unfettered access to cells by prison

31

officials is imperative if drugs and contraband are to be ferreted out and sanitary surroundings are to be maintained.  The *Hudson* Court further noted that a right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.

It is acknowledged, however, that an inmate patient does retain a privacy interest in his medical status and health information.  *See Doe v. Coughlin*, 697 F. Supp. 1234 (N.D.N.Y. 1988).  But for obvious reasons that privacy right cannot extend to those within the health care staff of the prison who must treat the inmate patient and/or who have a legitimate safety and security interest in that information.  Furthermore, logically, that privacy interest cannot extend to those who are assigned the task of compiling, copying, packaging and/or delivering those medical records to the very inmate who ordered them in the first place.

Additionally, it is arguable that an analogy can be made between the privacy interest retained in medical records and that of legal mail.  According to the Second Circuit,  a single instance of alleged interference with legal mail between a prisoner and his attorney, absent any allegation of actual injury, does not state a claim cognizable under 42 U.S.C. § 1983.  *See Morgan v. Montayne*, 516 F.2d 1367, 1371-72 (2d Cir. 1975), *cert. denied*, 424 U.S. 973 (1976).

Moreover, the plaintiff never alleges that the delivery of the medical records without an envelope was intentional.  In fact, the plaintiff attaches to his amended complaint, as Exhibit I, a letter dated June 19, 2003, written by Correctional Health Services Program Director Bannish and sent to the plaintiff, regarding the plaintiff's medical records.  Bannish writes, "...such mail

[medical mail] is not knowingly opened...no mail with a "confidential" sticker is opened unless it is in the presence of the inmate to whom it was addressed...The content of the written material of that mail would not be read even then. Your correspondence indicates that the confidential material you received was not in an envelope.  The medical records unit would not send it in that manner and if the mail was sent in an envelope mistakenly without a 'confidential' sticker and had been opened it would have been returned to you in an envelope stapled shut."  *See* Amended Complaint, Exhibit I.  At most, the plaintiff alleges negligence.

A claim of ordinary negligence is not enough to state a constitutional claim.  The United States Supreme Court in *Daniels v. Williams*, 474 U.S. 327 (1986), held that a lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person and that a state official's negligent act causing an unintended loss of life, liberty, or property does not implicate the Due Process Clause of the Constitution.  *See also Davidson v. Cannon*, 474 U.S. 344 (1986), for the proposition that where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required.

Thus, we urge the court to dismiss this portion of the plaintiff's complaint for failure to state a claim for a violation of the plaintiff's right to privacy under the Fourth Amendment.

**VII.   THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR DELIBERATE INDIFFERENCE UNDER THE EIGHTH AMENDMENT WITH RESPECT TO HIS CLAIM FOR FAILURE TO PROVIDE PRESCRIPTION MEDICATION**

The plaintiff claims that on July 17, 18 and 19 of 2003, while the plaintiff was confined to Cheshire Correctional Institution, Defendants Collette, Donovan and Taylor failed to provide the plaintiff with prescribed medications, thereby demonstrating deliberate indifference to the

plaintiff's serious medical needs and thus violating the plaintiff's right against cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

Regarding Defendant Collette specifically, the plaintiff only alleges that Defendant Collette held the position of nurse at Cheshire Correctional Institution and failed to provide prescribed medication to the plaintiff.  The plaintiff fails to indicate the date on which Defendant Collette allegedly failed to provide the prescribed medication.  The plaintiff also fails to identify the prescribed medication that was allegedly withheld.  Additionally, the plaintiff fails to identify and/or describe the medical condition for which the medicine in question was prescribed.  *See* Amended Complaint, Section A – Parties, ¶ 2.

Regarding Defendant Donovan specifically, the plaintiff only alleges that Defendant Donovan held the position of nurse at Cheshire Correctional Institution and failed to provide prescribed mental health medications on July 17, 2003.  The plaintiff fails to identify exactly what kind of mental health medication and identify and/or describe the medical condition for which the mental health medication in question was prescribed.  *See* Amended Complaint, Section A – Parties, ¶ 5.

Regarding Defendant Taylor specifically, the plaintiff only alleges that Defendant Taylor held the position of nurse at Cheshire Correctional Institution and failed to provide prescribed mental health medications on July 17, 18 and 19, 2003.  In the same section of his amended complaint, the plaintiff lists three medications – wellbutrin, clonidine and topiramate.  It is assumed that the aforementioned medications are the medications at issue.  The plaintiff fails to identify and/or describe the mental condition for which the aforementioned medications were

34

prescribed. The plaintiff does, however, allege that he feared depression. Additionally, it should be noted that in his amended complaint the plaintiff acknowledges that Defendant Taylor advised the plaintiff that the medications in question had expired. *See* Amended Complaint, Section A – Parties, ¶ 6. Furthermore, it should be noted that the plaintiff attaches to his amended complaint, as Exhibit P, a letter dated July 31, 2003 written by Correctional Health Services Program Director Bannish and sent to the plaintiff regarding the plaintiff's mental health medication. Bannish indicates that he is responding to a letter sent by the plaintiff where the plaintiff advises Bannish that his mental health medication had expired. Bannish then advises the plaintiff that Bannish is aware that the plaintiff is now receiving the medication and the order for the medication is good until August 14, 2003. *See* Amended Complaint, Exhibit P.

The aforementioned allegations are insufficient to state a claim for deliberate indifference to a serious medical need under the Eighth Amendment.

In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285 (1976). The alleged deprivation must be sufficiently serious. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir. 1994). A sufficiently serious medical condition constitutes a condition of urgency that may result in degeneration or extreme pain. Id. Additionally, the defendant must act with a sufficiently culpable state of mind. Id. A defendant acts with deliberate indifference when the defendant knows of and disregards an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970 (1994). "It is well-established that mere disagreement over the proper treatment does not create a

constitutional claim. So long as the treatment given is adequate, that fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation....Moreover, negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

In the case at bar, the plaintiff's claim for deliberate indifference of a serious medical need is insufficient on several grounds. First, the plaintiff never even alleges that he has a serious medical condition, that the prescribed medication was prescribed for a serious medical condition, or that Defendants Colette, Donovan and Taylor even knew that the plaintiff had a serious medical condition and then disregarded it. The plaintiff merely alleges that the defendants failed to provide the prescribed medication. That is all. The plaintiff never alleges that Defendants Collette, Donovan and/or Taylor or the Department of Correction, for that matter, refused to treat the plaintiff at all. And, finally, the plaintiff admits in his amended complaint through Exhibit P, Bannish's letter, that the prescriptions had expired anyway and then were reordered. The plaintiff does not appear to take issue with the expiration of the medication. At most, the plaintiff alleges some sort of disagreement over the way Defendants Collette, Donovan and Taylor treated him with respect to their refusal to dispense prescription medication to him after the prescription had expired.

Additionally, the plaintiff has failed to state a claim for deliberate indifference, because in reference to this particular claim, his amended complaint is too vague and is replete with conclusory allegations. The plaintiff fails to indicate a date on which Defendant Collette allegedly failed to provide the prescribed medication. The plaintiff fails to specify what

medication both Defendant Collette and Donovan failed to provide. The plaintiff completely

fails to identify the condition for which the medication was prescribed in the first place. Finally,

the plaintiff fails to allege that he even suffered from a serious medical condition.

In the Second Circuit, it is well-established that mere "conclusory allegation[s] without

evidentiary support or allegations of particularized incidents, [do] not state a valid claim."

*Brown v. City of Oneonta,* 235 F.3d 769, 773 (2d Cir. 2000). *Hall v. Dworkin,* 824 F. Supp.

1403, 1412 (N.D.N.Y. 1993) (complaints relying on civil rights statutes are insufficient if they

merely include a "litany of general conclusions"), *citing Barr v. Abrams,* 810 F.2d 358, 362 (2d

Cir. 1987). *Cf. Martin v. N.Y. State Dep't of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir. 1972)

("a complaint consisting of nothing more than naked assertions fails to state a claim"). Where

the plaintiff's complaint is "so confused, ambiguous, vague or otherwise unintelligible that its

true substance, if any, is well disguised," it may safely be dismissed. *Salahuddin v. Cuomo*, 861

F.2d 40, 42 (2d Cir. 1988). *See also, Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir. 1990), *cert. denied,*

499 U.S. 937, 111 S.Ct. 1389, 113 L.Ed.2d 446 (1991) (complaints based on violation of

constitutional right must contain more than conclusory allegation to avoid dismissal); *Flaherty v.*

*Coughlin*, 781 F.2d 10, 13 (2d Cir. 1983) (certain claims are so easily made and can precipitate

such protracted proceedings with such disruption of governmental functions that . . . detailed fact

pleading is required to withstand a motion to dismiss); *Ostrer v. Aronwald*, 567 F.2d 551, 553

(2d Cir. 1977) (complaints containing only conclusory, vague or general allegations of

wrongdoing on the part of government officials will be dismissed). Thus, in practice, "a

complaint must contain either direct or inferential allegations respecting all the material elements

necessary to sustain a recovery under *some* viable legal theory." *Telectronics Proprietary, Ltd. v. Medtronics, Inc.*, 687 F.Supp. 832, 836 (S.D.N.Y. 1988) (citations omitted).  A complaint which fails to do so is subject to dismissal for having failed to state a claim upon which relief can be granted.

Thus, we urge the court to dismiss this portion of the plaintiff's complaint for failure to state a claim for deliberate indifference under the Eight Amendment.

## VIII.  THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR DELIBERATE INDIFFERENCE UNDER THE EIGHTH AMENDMENT WITH RESPECT TO HIS CLAIM FOR DENIAL OF CARE BY A SPECIALIST

The plaintiff claims that while the plaintiff was confined to Cheshire Correctional Institution, Defendant Husband failed to permit the plaintiff to be examined by a specialist, thereby demonstrating deliberate indifference to the plaintiff's serious medical needs and thus violating the plaintiff's right against cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

The plaintiff only alleges that Defendant Husband held the position of nurse at Cheshire Correctional Institution and refused to permit the plaintiff to be examined by a specialist unless the specialist determined that it was necessary for him to examine the plaintiff.  *See* Amended Complaint, Section A – Parties, ¶ 4.  The plaintiff fails to provide the exact date when Defendant Husband allegedly failed to permit the plaintiff to see a specialist.  The plaintiff fails to identify the medical condition for which the specialist was allegedly needed.  The plaintiff even fails to identify what type of specialist he was prevented from seeing.

The aforementioned allegations are insufficient to state a claim for deliberate indifference to a serious medical need under the Eighth Amendment.

In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285 (1976). The alleged deprivation must be sufficiently serious. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir. 1994). A sufficiently serious medical condition constitutes a condition of urgency that may result in degeneration or extreme pain. Id. Additionally, the defendant must act with a sufficiently culpable state of mind. Id. A defendant acts with deliberate indifference when the defendant knows of and disregards an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970 (1994). "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation....Moreover, negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

In the case at bar, the plaintiff's claim for deliberate indifference of a serious medical need is insufficient on several grounds. First, the plaintiff never even alleges that he has a serious medical condition, that a specific type of specialist could successfully address the condition, or that Defendant Husband even knew that the plaintiff had a serious medical condition and then disregarded it. The plaintiff merely alleges that Defendant Husband advised the plaintiff that the plaintiff would not be examined by a specialist unless the specialist

determined it was necessary for him to examine the plaintiff.  That is all.  The plaintiff never alleges that Defendant Husband or the Department of Correction, for that matter, refused to treat the plaintiff at all.  At most, the plaintiff alleges some sort of disagreement over the way Defendant Husband treated him with respect to his request to be examined by a specialist.

Additionally, the plaintiff has failed to state a claim for deliberate indifference, because in reference to this particular claim, his amended complaint is too vague and is replete with conclusory allegations.  The plaintiff fails to indicate a date on which Defendant Husband allegedly failed to permit the plaintiff to be examined by a specialist.  The plaintiff fails to specify what type of specialist he was prevented from seeing.  The plaintiff completely fails to identify the condition for which the specialist was needed in the first place.

In the Second Circuit, it is well-established that mere "conclusory allegation[s] without evidentiary support or allegations of particularized incidents, [do] not state a valid claim." *Brown v. City of Oneonta,* 235 F.3d 769, 773 (2d Cir. 2000).   *Hall v. Dworkin,* 824 F. Supp. 1403, 1412 (N.D.N.Y. 1993) (complaints relying on civil rights statutes are insufficient if they merely include a "litany of general conclusions"), *citing Barr v. Abrams,* 810 F.2d 358, 362 (2d Cir. 1987). *Cf. Martin v. N.Y. State Dep't of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir. 1972) ("a complaint consisting of nothing more than naked assertions fails to state a claim").  Where the plaintiff's complaint is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised," it may safely be dismissed.  *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  *See also, Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir. 1990), *cert. denied,* 499 U.S. 937, 111 S.Ct. 1389, 113 L.Ed.2d 446 (1991) (complaints based on violation of

constitutional right must contain more than conclusory allegation to avoid dismissal); *Flaherty v. Coughlin*, 781 F.2d 10, 13 (2d Cir. 1983) (certain claims are so easily made and can precipitate such protracted proceedings with such disruption of governmental functions that . . . detailed fact pleading is required to withstand a motion to dismiss); *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977) (complaints containing only conclusory, vague or general allegations of wrongdoing on the part of government officials will be dismissed). Thus, in practice, "a complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under *some* viable legal theory." *Telectronics Proprietary, Ltd. v. Medtronics, Inc.*, 687 F.Supp. 832, 836 (S.D.N.Y. 1988) (citations omitted). A complaint which fails to do so is subject to dismissal for having failed to state a claim upon which relief can be granted.

Thus, we urge the court to dismiss this portion of the plaintiff's complaint for failure to state a claim for deliberate indifference under the Eight Amendment.

IX.  **THE PLAINTIFF HAS FAILED TO STATE A CLAIM FOR A VIOLATION OF HIS RIGH TO PRIVACY UNDER THE FOURTH AMENDMENT WITH RESPECT TO HIS LEGAL MAIL CLAIM**

The plaintiff appears to claim that while the plaintiff was confined to Cheshire Correctional Institution, Correctional Treatment Officer James, who is not a named defendant to this lawsuit, opened one piece of the plaintiff's legal mail, thereby violating the plaintiff's right to privacy under the Fourth Amendment of the United States Constitution. The plaintiff fails to provide the exact date when this alleged incident occurred. Based upon plaintiff's Exhibit O, attached to his amended complaint, a Legal Correspondence Receipt Form dated August 4, 2003

and signed by Correctional Treatment Officer James, it is assumed for the purposes of this motion, that this alleged incident occurred on August 4, 2003. The plaintiff appears to allege that Correctional Treatment Officer James only opened one piece of the plaintiff's legal mail on one occasion. The plaintiff never alleges that anyone, including Correctional Treatment Officer James, ever read his one piece of legal mail. The plaintiff never alleges that anyone ever publicized his one piece of legal mail. The plaintiff never alleges that his one piece of legal mail was disclosed to a third party. The plaintiff does not allege any damage as a result of this alleged opening of his one piece of legal mail. Additionally, it should be noted that in plaintiff's Exhibit O, Correctional Treatment Officer James writes at the bottom of the Legal Correspondence Receipt Form in reference to legal mail sent from Dr. Bannish of the Department of Correction to the plaintiff, "8/5/03 – Accidentally opened prior to signing."

The aforementioned allegations are insufficient to state a claim for a violation of the plaintiff's right to privacy under the Fourth Amendment.

According to the Second Circuit, a single instance of alleged interference with legal mail between a prisoner and his attorney, absent any allegation of actual injury, does not state a claim cognizable under 42 U.S.C. § 1983. *See Morgan v. Montayne*, 516 F.2d 1367, 1371-72 (2d Cir. 1975), *cert. denied*, 424 U.S. 973 (1976).

Thus, we urge the court to dismiss this portion of the plaintiff's complaint for failure to state a claim for a violation of the plaintiff's right to privacy under the Fourth Amendment.

**X.    ANY ATTEMPT BY THE PLAINTIFF TO HOLD CORRECTIONAL OFFICER NEGRON AND CORRECTIONAL TREATMENT OFFICER JAMES LEGALLY RESPONSIBLE REGARDING PLAINTIFF'S MEDICLA RECORDS CLAIM AND LEGAL MAIL CLAIM RESPECTIVELY ARE IMPROPER, AS NEITHER NEGRON NOR JAMES ARE NAMED DEFENDANTS TO THIS LAWSUIT**

The plaintiff appears to claim that Correctional Officer Negron, by delivering the plaintiff's medical records without an envelope to the plaintiff, and Correctional Treatment Officer James, by opening one piece of the plaintiff's legal mail, violated the plaintiff's constitutional right to privacy under the Fourth Amendment to the United States Constitution. Neither Negron nor James are named defendants to this lawsuit. Neither Negron nor James appear in the caption of the plaintiff's amended complaint. Neither Negron nor James appear in the caption or in the list of parties on the civil docket for this case. *See* Civil Docket for Case #: 3:03-cv-00944-RNC, Attachment F. Neither Negron nor James have been served.

Thus, we urge the court to dismiss any claims pending against Correctional Officer Negron and Correctional Treatment Officer James, since they are not named defendants to this lawsuit.

## CONCLUSION

Wherefore, all the foregoing reasons, the defendants respectfully seek dismissal of this matter.

                        DEFENDANTS,
                        Yvonne Collette, et al.

                        RICHARD BLUMENTHAL
                        ATTORNEY GENERAL


                    BY:___/s/_____
                        Kathleen A. Keating
                        Assistant Attorney General
                        Federal Bar No. ct25247
                        110 Sherman Street
                        Hartford, CT  06105
                        Telephone:  (860) 808-5450
                        E-mail:  kathleen.keating@po.state.ct.us


## CERTIFICATION

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid, this 6th day of December 2004, to:

James McKinnon
Inmate No. 100770
Corrigan-Radgowski Correctional Center
986 Norwich-New London Tpke.
Uncasville, CT  06382


                        ___/s/_____
                        Kathleen A. Keating
                        Assistant Attorney General